BROWN DYNALUBE COMPANY, Inc.,
Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 8457.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 10, 1961.

Decided Jan. 11, 1962.

William Thomas Minor, Jr., Charlotte, N. C., for petitioner.

Robert W. Kernan, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Kenneth E. Levin, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOPER, BRYAN and BELL, Circuit Judges.

SOPER, Circuit Judge.

This petition for review seeks the reversal of a decision of the Tax Court holding that the losses suffered by a corporation while acting as an agent for the sale of lubricating devices could not be carried over and deducted from profits earned by it in later years in the leasing of automatic packaging machines after control of the corporation had passed into different hands. The Tax Court held that the corporation was not entitled to the net operating loss carry-over granted by Section 122(b) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 122 (b) (2) and by Section 172(a) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 172(a), because control of the corporation through the change in the ownership of its stock was acquired for the purpose of evasion of federal income taxes and because Section 129(a) of the 1939 Code and Section 269 of the 1954

Code forbid deductions and allowances under such circumstances.*

Brown Dynalube Company, Incorporated, the taxpayer in this case, is a North Carolina corporation which was authorized by its charter to deal in all kinds of property as an agent or otherwise. From the time of its organization in May 1950 until September 15, 1959 it had outstanding 4 shares of capital stock of the par value of $100 per share. Two shares each were held by E. H. Newcombe and D. M. Coddington of Charlotte, North Carolina. In the beginning the corporation was exclusive sales agent of lubricating devices manufactured first by W. Y. Brown and later by Newcombe and Coddington as a co-partnership. The business of the taxpayer proved to be unprofitable and it incurred operating losses during the years 1950 to 1953 as follows:

| | |
|---|---|
| 1950 | $40,607.55 |
| 1951 | 30,945.77 |
| 1952 | 5,994.72 |
| 1953 | 550.54 |

On September 30, 1953 the taxpayer was indebted to the partnership in the sum of $77,477.46 for which the partnership was allowed a deduction as a bad debt by the Internal Revenue Service. At the end of the year the taxpayer was indebted to a corporation owned by Coddington and his brother in the amount of $4,455.64 and this also was charged off as a bad debt when the Coddington corporation was dissolved in 1954. The taxpayer was also indebted to four other creditors on December 31, 1953 in the aggregate sum of $1,238.66, which Newcombe and Coddington assumed as a personal liability at the time their manufacturing partnership was dissolved in February 1954.

The Brown Dynalube Company, Incorporated, the taxpayer, thereupon became a mere corporate shell which had nothing of value and was heavily in debt. Then began the series of transactions which led to the use of its corporate structure as a means of deducting the losses it had incurred from gains it thereafter made in another line of business with different stockholders. On December 31, 1953 Newcombe, for a stated consideration of $1.00, assigned his two shares of stock and his claims against the corporation to the secretary of the lawyer who devised the plan for the future operations of the taxpayer; and on May 7, 1954 Coddington made similar assignments of his stock and his claims. The secretary in turn assigned the four shares of stock and the claims to E. S. Dillard who thereupon became owner of all of the stock with control over subsequent transactions.

Dillard was an important executive of various corporations in the business of manufacturing paper boxes and cartons. During all times pertinent here he was the president and general manager of the Old Dominion Box Company, Inc., a corporation controlled by his father in which he held 15% of the stock; and he also had a controlling interest in Dacam Corporation, a North Carolina corporation, engaged in the manufacture of equipment for packaging cartons and paper boxes. On the day that he became the sole shareholder of the taxpayer corporation he transferred to it all of his claims against it in the sum of $83,171.76 and paid it the sum of $1,828.24 in return for debenture bonds of the face value of $85,000, payable in 20 years, with interest at 6%.

The Dacam Corporation in May 1954 had an established business in leasing

---

* Section 129(a) of the Internal Revenue Code of 1939 to which, insofar as is important here, Section 269 of the Internal Revenue Code of 1954 is essentially similar, provides in pertinent part:

 " * * * If (1) any person or persons acquire, on or after October 8, 1940, directely or indirectly, control of a corporation, * * * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * * "

automatic packaging machines in the west with divisions in Colorado, Montana, Washington and California. In that month Dillard arranged for the sale of 32 machines in the California area to the taxpayer corporation for the sum of $84,499.26 which was paid out of the sum of $90,000 borrowed and loaned to it by Dillard on the security of a note and a chattel mortgage which were pledged to the lending bank. When this transaction was consummated the balance sheet of the taxpayer showed an excess of liabilities over assets of $78,452.40. Later in the same year 8 additional machines were sold by Dacam to the taxpayer under a similar arrangement. These sales were made to the taxpayer corporation at book value without the solicitation of competitive bids or advertisements although other persons were interested in purchasing the machines.

Dacam continued in the same line of business but the profits which it had earned in the fiscal year ending September 30, 1953 of $82,241.54 were reduced to $22,788.83 in the succeeding year. The taxpayer corporation on the other hand made a profit from the business of leasing packaging machines of $26,574.88 for the year 1954 and $10,244.62 for 1955.

Newcombe, who was employed as a salesman for the Old Dominion Company, continued as president of the taxpayer corporation but he took no part in its operations in the new business. There were no sales of lubricating devices in the tax years 1954, 1955 and 1956 but such sales were made in 1957 in the amount of $2,570.21, in 1958 of $2,687.79, and in 1959 sales of $5,327.31. In that year large contracts for the purchase of such equipment by the United States Government were impending.

In August 1959 the taxpayer went out of the packaging business and sold all of its machines to Old Dominion for $43,500, which was $5,700 less than their book value but was approximately equal in amount to the current total liabilities of the taxpayer at the end of 1958. On

September 1, 1959 Dillard gave his four shares of the taxpayer's stock to Newcombe. In the meantime Dillard had divested himself of the taxpayer's debenture bonds and thereafter he had no further connection with the taxpayer.

Dillard gave away all of the debenture bonds of the taxpayer which he held in a series of charitable contributions between 1954 and 1958. By September 1, 1959 when he, Dillard, severed his connection with the taxpayer corporation all of these bonds amounting to $87,500 had been acquired by a corporation owned by the family of the taxpayer's attorney; and on September 15, 1959 they were exchanged for 875 shares of the taxpayer's common stock.

The taxpayer corporation reported its net operating income for 1954 and 1955 and claimed deductions for the operation losses incurred in previous years as shown above. In addition, the taxpayer claimed interest deductions on the face value of the debenture bonds in the amount of $3,187.50 for 1954 and in the amount of $5,100 for each of the years 1955 and 1956. The Commissioner disallowed these claims and his determination was affirmed by the Tax Court.

The appellant's position is that Dillard obtained control of the Brown corporation for legitimate business purposes with not intent to evade the payment of income taxes. The argument runs in this fashion. When the transfer of ownership and control of the corporation was made by Newcombe and Coddington to Dillard and the corporation went into the business of selling machines for packaging cartons and papers boxes on the west coast, both Dillard and Newcombe thought that the corporation would obtain an additional market for lubricating equipment and that profits would be made from which additional capital for the operation of the grease gun business, which the corporation greatly lacked, would be obtained, and thereby it was kept alive as a continuing enterprise until such time as large purchasing orders for lubricating equipment, which were confidently expected, would be obtained

from the United States. (While no orders for such equipment were obtained in the years 1954 to 1956, they were obtained in 1957, 1958 and 1959.) With this prospect Dillard acquired the stock as an investment and in order to be of aid to Newcombe, who was his personal friend. Additional reasons for the acquisition of the stock by Dillard were that Dacam needed cash for its west coast operations and also that it turned over some of its business to the Brown corporation in order to avoid the charge that it was violating the antitrust laws by forcing customers on the west coast through its control of patents to lease its machines. Issuance of debenture bonds in exchange for corporate liabilities was explained as a means of making necessary credit available to the Brown corporation, by subordinating the liabilities and extending their due date.

 The Tax Court did not find this argument persuasive and its conclusions must be accepted unless they are clearly erroneous; and since the Commissioner rejected the taxpayer's claims the burden of proof is on the taxpayer to show that the Commissioner's determination of deficiencies in the tax years was incorrect. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212.

In supporting the Tax Court's conclusions the United States points to these weaknesses in the taxpayer's contentions. When the transfer of the control of the Brown corporation took effect the bottom had fallen out of its lubricating equipment business. In fact the corporation was insolvent and could not go on, and Newcombe, the experienced man in this line, devoted his activities during the tax years entirely to sales for the Old Dominion Box Company for which he was paid a salary. There was no need for Dillard to take over the Brown corporation in order to raise money for the operations of the Dacam Corporation. He could have as easily borrowed the money on his personal credit with the security of the machines of the Dacam Corporation, as he actually did for the taxpayer. There is nothing in the record other than the testimony of Dillard that any prosecutions of Dacam for violation of the antitrust acts were actually contemplated, and indeed no evidence of any kind that such violations had taken place. During the period of Dillard's control the taxpayer corporation did a profitable business in selling packaging machines against which the taxpayer's previous losses could be claimed as an offset, whereas Dacam would have been subject to income tax on the same business if it had continued to make the sales. Finally, Dillard's lack of a genuine purpose to keep the Brown corporation alive as a profitable investment is shown by his transfer of the stock of the corporation to his friend Newcombe at a time when orders from the United States for lubricating equipment were actually pending, and by his action in causing all of the packaging machines of the corporation to be transferred at less than their book value to the Old Dominion Box Company which he, together with members of his family, also controlled. Our conclusion is that there was abundant evidence to support the decision of the Tax Court.

For like reasons the Tax Court was justified in denying the deductions for interest at 6% on the debentures in the face amount of $85,000 acquired for a nominal consideration by Dillard, the sole owner of the corporation. The bonds were issued as part of the plan under which Dillard acquired control of the corporation so that he might transfer to it a part of the business of the Dacam Corporation for the purpose of evading income taxes.

Affirmed.